## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PERKIOMEN VALLEY SCHOOL DISTRICT,** | |
| **Plaintiff,** | **CIVIL ACTION NO. 18-2093** |
| **v.** | |
| **S.D., by and through her parents, J.D. and J.D., and J.D. and J.D., individually** | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

**Rufe, J.**                                                          **September 24, 2019**

This case arises under the Individuals with Disabilities Education Act ("IDEA")[1] and

Section 504 of the Rehabilitation Act of 1973.[2] S.D., a student with disabilities, attended public

school at Perkiomen Valley School District ("District") for three years and received special

education services. Her parents, J.D. and J.D. ("Parents"), then moved S.D. to a private school

based on concerns that S.D. was not making sufficient academic progress. Parents then

commenced an administrative special education due process hearing against the District, where a

Hearing Officer determined that the District failed to provide S.D. with a free appropriate public

education ("FAPE") with respect to reading fluency, and ordered that the District reimburse

Parents for one year of private school tuition and transportation expenses to and from that school.

---

[1] 20 U.S.C. §§ 1400, *et seq.*

[2] 29 U.S.C. § 794.

The District appealed the Hearing Officer's decision to this Court[3] and moved for disposition on the administrative record. For the following reasons, the Court will grant the District's motion, therefore reversing the Hearing Officer's decision.

## I.     IDEA OVERVIEW

The IDEA requires school districts that receive federal education funding to provide every child with disabilities with a "free appropriate public education," commonly referred to as a FAPE.[4] A FAPE is "an educational instruction 'specially designed . . . to meet the unique needs of a child with a disability,' coupled with any 'related services' that are 'required to assist a child with a disability to benefit from [that instruction].'"[5] The FAPE required under the IDEA must be "tailored to the unique needs of the handicapped child by means of an 'individualized educational program' (IEP)."[6]

An IEP is developed through collaboration between parents and school districts,[7] and "must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide."[8] If "parents believe that the school district is not providing a FAPE for their child, they may unilaterally remove him [or her] from the school, enroll him [or her] in a different

---

[3] 20 U.S.C. § 1415(i)(3)(A).

[4] 20 U.S.C. § 1412(a)(1).

[5] *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007) (citing 20 U.S.C. §§ 1401(26)(A), (29)).

[6] *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 181 (1982) (citation omitted).

[7] *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012).

[8] *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005).

school, and seek tuition reimbursement for the cost of the alternative placement."[9] The IDEA provides recourse in the form of an administrative due process hearing.[10]

A Hearing Officer's decision can be based on either substantive or procedural grounds.[11] A decision based on substantive grounds requires "a determination of whether the child received a [FAPE]."[12] A Hearing Officer may find that a procedural violation warrants relief "only if the procedural inadequacies (I) impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a [FAPE] to the parents' child; or (III) caused a deprivation of educational benefits."[13]

If either party is aggrieved by the findings and decision reached after such a hearing, the IDEA further allows that party to file a civil suit in state or federal court.[14] "When parents challenge a school's provision of a FAPE to a child, a reviewing court must (1) consider whether the school district complied with IDEA's procedural requirements and (2) determine whether the educational program was 'reasonably calculated to enable the child to receive educational benefits.'"[15]

## II.     IDEA STANDARD OF REVIEW

In IDEA actions, the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its

---

[9] *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir. 2013).

[10] *See* 20 U.S.C. § 1415(f).

[11] *See* 20 U.S.C.A. § 1415(f)(E) (West).

[12] *Id.*

[13] *Id.*

[14] *See* 20 U.S.C.A. § 1415(i)(2)(A).

[15] *Mary T. v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 249 (3d Cir. 2009).

decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."[16] In evaluating such claims, the court applies a "modified *de novo*" standard of review.[17] This standard requires the court to give "due weight" and "deference" to the findings in the administrative proceedings.[18] "Although a district court must make its own findings by a preponderance of the evidence,"[19] factual findings of the hearing officer, such as whether a school district fulfilled its FAPE obligations, are considered prima facie correct, and if the reviewing court does not adhere to them, it must explain why.[20] In addition, credibility determinations based on live testimony are given "special weight," and the court must accept them "unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion."[21] The hearing officer's legal conclusions are reviewed *de novo*.[22] "The party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged."[23]

### III.    PROCEDURAL HISTORY

On September 19, 2017, Parents, on behalf of S.D. and through counsel, filed a due process complaint against the District. Parents alleged that the District denied S.D. a FAPE in the

---

[16] 20 U.S.C. § 1415(i)(2)(C).

[17] *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003).

[18] *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010); *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199–200 (3d Cir. 2004).

[19] *Shore*, 381 F.3d at 199 (citing 20 U.S.C. § 1415(1)(2)(B)(iii)).

[20] *Id.* (quoting *S.H.*, 336 F.3d at 270); *see also D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 243 (3d Cir. 2012) (noting that such factual findings are subject to clear error review).

[21] *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 529 (3d Cir. 1995); *see also Shore*, 381 F.3d at 199 ("In this context[,] the word 'justify' demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court.").

[22] *S.H.*, 336 F.3d at 270.

[23] *Ridley*, 680 F.3d at 270.

2015-2016, 2016-2017, and 2017-2018 school years based on deficiencies in S.D.'s programming.[24] Parents also alleged that this denial violated Section 504 by discriminating against S.D. based on her disability.[25] Parents requested compensatory education for the 2015-2016 and 2016-2017 school years, reimbursement for S.D.'s 2017-2018 private school tuition and transportation costs, and reimbursement for the May 2017 independent evaluation report which was obtained at Parents' expense.[26]

The administrative complaint resulted in six days of evidentiary hearings before a Hearing Officer,[27] after which the Hearing Officer concluded that although the District met its obligations to provide a FAPE to S.D. in many goal areas in S.D.'s programming, "the District denied the student FAPE, and more precisely barred the parents from meaningful participation in understanding the student's programming due to holes in the reading fluency goal-progress data, in its handling of reading fluency in the student's educational programming."[28] The District was ordered to reimburse Parents for (1) private school tuition for the 2017-2018 school year, and (2) the cost of transportation to and from S.D.'s private school for the 2017-2018 school year.[29]

---

[24] *See* Pennsylvania Special Education Hr'g Officer Final Decision & Order [Doc. No. 1-1] at 2 ("Administrative Decision").

[25] *See id.*

[26] *See id.*

[27] The hearings took place on: November 7, 2017; December 20, 2017; January 3, 2018; January 17, 2018; March 5, 2018; and March 15, 2018.

[28] *See* Administrative Decision at 19.

[29] *See id.* at 25.

## IV.    FACTS

In reviewing the Hearing Officer's determination, the Court must consider the evidence within the administrative record, including the Hearing Officer's decision, the hearing transcripts, various administrative exhibits introduced by both parties, and S.D.'s relevant IEPs.

### A.  Background

In February 2012, S.D. was in her kindergarten year in private school.[30] A private evaluation diagnosed S.D. with dyslexia and determined that her full-scale IQ was 84.[31]

Parents enrolled her in the District for her 3rd grade year, in anticipation of which, in the Spring of 2014, S.D. was evaluated by the District.[32] In May 2014, the District issued an Evaluation Report.[33] The Report recommended that S.D. be identified as a student with specific learning disabilities in reading, mathematics, and written expression.[34] The Report also recommended speech and language services for S.D.'s articulation needs.[35] In June 2014, S.D.'s team met to craft her IEP.[36]

### B.  S.D.'s 4th Grade IEP (May 2015)

In May 2015, at the end of her third grade year, S.D.'s team met to revise her IEP.[37] S.D.'s present level of academic achievement on the AIMSweb assessment in reading fluency was calculated at 38 words-correct-per-minute ("wcpm") on a 3rd grade level—S.D.'s current

---

[30] *See id.* at 3.

[31] Both parties agree that S.D. qualifies as a student with learning disabilities. *See id.* at 2–4.

[32] *See id.* at 5.

[33] *See id.* The Hearing Officer mistakenly found that the Report was conducted in May of 2015.

[34] *See id.* at 6.

[35] *See id.*

[36] Because Parents' claims in this matter were limited to S.D.'s 4th, 5th, and 6th grade IEPs, the Hearing Officer made no findings of fact or conclusions with regard to S.D.'s 3rd grade IEP. *See id.* at 6, n.6.

[37] *See id.*

grade level.[38] The IEP set a goal of 127 wcpm on the 3rd grade probe.[39] On the same assessment, at a 2nd grade level, S.D.'s median score was 58 wcpm.[40]

### C. Revisions to S.D.'s 4th Grade IEP (December 2015/January 2016)

In December 2015, S.D.'s IEP team met to update her IEP.[41] At this meeting, Parents expressed concerns about S.D.'s progress and instruction, and aspects of S.D.'s programming in reading and mathematics were revised.[42] On this revision, S.D. was reported to have improved to 80 wcpm on a 2nd grade probe.[43] One month later, in January 2016, S.D.'s IEP team met again to update the IEP.[44] Neither the December 2015 or January 2016 revisions to the IEP made any changes to S.D.'s goals.[45]

### D. S.D.'s 5th Grade IEP (May 2016)

In May 2016, at the end of 4th grade, at S.D.'s annual IEP team meeting, S.D.'s IEP was revised.[46] The May 2016 IEP was the IEP in place over the Summer of 2016 and in September 2016 for S.D.'s 5th grade year.[47] In the present levels of academic achievement in reading fluency on a 4th grade probe — S.D.'s current grade level — S.D.'s median score was 87 wcpm.[48] There were no reported 3rd grade probe scores. On the 2nd grade probe, S.D. had

---

[38] *See id.* at 6–7.

[39] *See* S-6 at 10.

[40] *See* Administrative Decision at 7. S.D.'s goal from the prior year IEP on the 2nd grade probe was 106 wcpm. *See* S-6 at 10–11.

[41] *See* Administrative Decision at 8.

[42] *See id.*

[43] *See id.*

[44] *See id.*

[45] *See id.*

[46] *See id.* at 9.

[47] *See id.*

[48] *See id.*

improved to 96 wcpm.[49] The May 2016 IEP kept in place the May 2015 goal of 127 wcpm on a 3rd grade probe.[50]

###    E.  May 2017 Reevaluation and Private Evaluation

In May 2017, the District issued the mandatory triennial Reevaluation Report on S.D.[51] That Report recommended that S.D. continue to be identified as a student with specific learning disabilities and articulation needs.[52] Also in May 2017, Parents obtained a private evaluation of S.D.[53] On this evaluation, S.D.'s full-scale IQ was determined to be 81.[54] The Hearing Officer found that the "assessments largely align with the comprehensive testing/assessments from the February 2012 private evaluation and the District's May 2014 evaluation, although the behavior measures show improvement."[55] The private evaluator recommended that S.D. be identified as a "student with specific learning disabilities in reading and mathematics and needs in language and written expression."[56]

###    F.  S.D.'s 6th Grade IEP (June 2017)

One month later, at the end of 5th grade, S.D.'s IEP team met for the annual IEP meeting.[57] S.D.'s present level of achievement in reading fluency on the 3rd grade level improved to a median score of 103.5 wcpm (reported as 84, 107, 106, 101).[58] S.D.'s 2nd grade

---

[49] *See id.*

[50] *See id.* In March 2017, the IEP team revised the May 2016 IEP but there was nothing of relevance to reading fluency in the revisions.

[51] *See id.* at 12.

[52] *See id.*

[53] *See id.*

[54] *See id.*

[55] *Id.*

[56] *Id.* at 13.

[57] *See id.*

[58] *See id.* The Hearing Officer mistakenly reported the mean of 99 rather than the median of 103.5.

score was reported at a median of 108 wcpm.[59] The Hearing Officer found that S.D.'s 4th grade probe data was not reported although the record shows it recorded at 76 wcpm.[60] At this meeting "Father's emotions ran high . . . including raising his voice and loudly hitting the table, along with . . . accusing a District employee of allegedly manufacturing a writing sample offered as work product of the student."[61] The IEP team set a new goal on the 2017 IEP of 107 wcpm on a 4th grade probe.[62]

### G. Private Enrollment and August 2017 Revisions to 6th Grade IEP

At some point between mid-July and mid-August 2017, Parents unilaterally removed S.D. from public school and enrolled her in a private placement that serves students with learning disorders, including dyslexia.[63] Parents transported S.D. to the private placement each day.[64]

In August 2017, S.D.'s IEP team, including Parents, met in light of Parents' decision to enroll S.D. in a private placement.[65] The August IEP contained revisions, though none related to reading fluency, and the goals remained the same as they were in the June 2017 IEP.[66] S.D. did not return to the District.[67]

---

[59] *See* S-15 at 10.

[60] *See id.* at 10, 24.

[61] *See* Administrative Decision at 15.

[62] *See* S-15 at 24.

[63] *See* Administrative Decision at 15.

[64] *See id.*

[65] *See id.*

[66] *See id.* at 15–16.

[67] *See id.* at 16.

## V.    DISCUSSION

The Hearing Officer's decision is unclear on whether he found that the District substantively violated the IDEA by denying S.D. a FAPE or only that the District violated the procedural safeguards of the IDEA by denying Parents an opportunity to participate.[68] The Court will assume without deciding that the Hearing Officer found that S.D. was denied a FAPE on both substantive and procedural grounds. Thus, the issues in this case are: 1) whether the Hearing Officer erred in finding that the District denied S.D. a FAPE in reading fluency for the 2017-2018 school year; 2) whether the Hearing Officer erred in finding that the District violated Parents' right of participation; and 3) whether the Hearing Officer erred in finding that District violated Section 504 by discriminating against S.D. based on her disability. Based on these asserted errors, the District contends that the Hearing Officer should not have awarded tuition reimbursement and transportation costs for S.D.'s 2017-2018 school year. After reviewing the administrative record and giving due weight to the factual findings of the Hearing Officer, the Court finds by a preponderance of the evidence that the Hearing Officer erroneously determined that S.D. did not receive a FAPE for reading fluency during the 2017-2018 school year and that the District violated Parents' right of participation.

### A.  The District Met Its Substantive Obligation Under the IDEA.

"To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."[69] But since progress for one student is different than progress for another

---

[68] For example, the Hearing Officer states "the District denied the student FAPE, and more precisely barred the parents from meaningful participation in understanding the student's programming due to holes in the reading fluency goal-progress data, in its handling of reading fluency in the student's education programming." *See* Administrative Decision 19.

[69] *Endrew F. v. Douglas Cty. Sch. Dist.*, 137 S. Ct. 988, 999 (2017).

student, the IEP must be "constructed only after careful consideration of the child's present levels of achievement, disability, and potential for growth."[70] Moreover, "it cannot be determined whether an IEP was appropriate solely by evaluating a child's progress or lack of progress under that IEP."[71] Instead, "a court should determine the appropriateness of an IEP as of the time it was made, and should use evidence acquired subsequently to the creation of an IEP only to evaluate the reasonableness of the school district's decisions at the time that they were made."[72]

In addition, an "IEP need not aim for grade-level advancement" if such a goal "is not a reasonable prospect for a child."[73] Incremental progress can be considered meaningful, but a meaningful educational benefit must be more than *de minimis*.[74] "[A]t a minimum, the IEP must be reasonably calculated to enable a child to receive meaningful educational benefits in light of the student's intellectual potential."[75]

"Any review of an IEP must appreciate that the question is whether the IEP is reasonable, not whether the court regards it as ideal."[76] And "[t]he issue of whether an IEP is appropriate is a question of fact."[77] Thus, the modified *de novo* standard applies and the Court will give due weight to the Hearing Officer's findings.[78]

---

[70] *Id.*

[71] *Colonial Sch. Dist. v. G.K. by & through A.K.*, No. 17-3377, 2018 WL 2010915, at *11 (E.D. Pa. Apr. 30, 2018), *aff'd*, 763 F. App'x 192 (3d Cir. 2019).

[72] *D.S.*, 602 F.3d at 564 (citing *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 762 (3d Cir. 1995)).

[73] *Endrew F.*, 137 S. Ct. at 1000.

[74] *See id.* at 1001.

[75] *D.S.*, 602 F.3d at 557 (internal quotations omitted).

[76] *Endrew F.*, 137 S. Ct. at 1000 (citing *Rowley*, 458 U.S. at 206–07).

[77] *D.S.*, 602 F.3d at 564 (quoting *S.H.*, 336 F.3d at 271).

[78] *See id.*

The Hearing Officer found that "by and large" the District met its obligation to provide a FAPE.[79] Based on his findings, the Hearing Officer found that "the student made progress across most goals . . . on four of the five academic goal areas (the speech articulation goal never entered into this record as an area of contention) the student made progress: The [student] made meaningful progress, and exhibited significant learning, in the areas of reading comprehension, written expression, math concepts/applications, and math computations."[80] The Court gives due weight to these findings and, after reviewing the record, agrees that a FAPE was provided in these areas.[81]

The Hearing Officer further found that "the record as a whole points to overarching progress in reading."[82] "In reading fluency, however, the student did not make progress."[83] The Hearing Officer based this conclusion on his findings regarding the AIMSweb assessments as reported in S.D.'s IEPs. S.D.'s scores and goals on the AIMSweb reading fluency tests are aggregated in the table below:

---

[79] Administrative Decision at 17.

[80] *Id.*; *see also id.* at 19 ("In all other academic goal areas, the District met its FAPE obligations.").

[81] That a FAPE was provided in these areas is not contested in the current litigation.

[82] *Id.* at 18.

[83] *Id.* at 17.

|  | 2nd Grade Probe | 3rd Grade Probe | 4th Grade Probe |
|---|---|---|---|
| **May 2015 IEP** (pre-4th Grade) | Median Score = 58 wcpm (56, 58, 68)[84]<br><br>Short Term Objective = 106 wcpm[85] | Score = 38 wcpm[86]<br><br>Goal = 127 wcpm[87] |  |
| **December 2015 Revision** | Score = 80 wcpm[88]<br><br>Short Term Objective = 106 wcpm[89] | Goal = 127 wcpm[90] |  |
| **May 2016 IEP** (pre-5th Grade) | Score = 96 wcpm[91]<br><br>Short Term Objective = 106 wcpm[92] | Score = N/A<br><br>Goal = 127 wcpm[93] | Score = 87 wcpm[94] |
| **June 2017 IEP** (pre-6th Grade) | Median Score = 108 wcpm (106, 108, 116)[95] | Median Score = 103.5 wcpm (84, 106, 107, 101)[96]<br><br>Short Term Objective = 127 wcpm[97] | Score = 76 wcpm[98]<br><br>Goal = 107 wcpm[99] |

---

[84] *See id.* at 6-7.

[85] *See* S-6 at 20.

[86] *See* Administrative Decision at 6-7.

[87] *See* S-6 at 10.

[88] *See* Administrative Decision at 8; *see also* S-7 at 11.

[89] *See* S-7 at 22.

[90] *Id.*

[91] *See* Administrative Decision at 9.

[92] *See* S-9 at 26.

[93] *See id.*

[94] *See* Administrative Decision at 9.

[95] *See* S-15 at 10.

[96] *See* Administrative Decision at 13.

[97] *See* S-15 at 24

[98] *See id.* at 10.

[99] *See id.* at 24.

From the fact that "the District included [2nd] grade probe data for reading fluency in the May 2016 IEP, goal progress was written for [3rd] grade probes, and there is no [3rd] grade probe data to serve as a baseline for the May 2016 IEP goal,"[100] the Hearing Officer concluded that S.D. had not been instructed on 3rd grade probe levels during the prior year despite her goal in the May 2015 IEP calling for instruction on a 3rd grade probe level. Thus, the Hearing Officer found that "[a]t some point in the 2015-2016 school year, not necessarily by December 2015 when there was 2nd grade probe progress but certainly by May 2016, when the annual IEP meeting was held, the District should have realized that a reading fluency goal written for 3rd grade probes was not being attempted. Yet the reading fluency goal in the May 2016 IEP was still written for 3rd grade probes."[101]

In its papers, the District explains that S.D. was only tested on 2nd and 4th grade probes for the May 2016 IEP because she was still on a 2nd grade instructional level but in the 4th grade. Accordingly, the testing was to provide S.D.'s team with information on her progress as to her current instructional level and in comparison to her actual grade. Thus, the District argues that there was no hole in the data on this IEP.[102] The District further explains that the Hearing Officer's finding that S.D. was not instructed on the 3rd grade probes based on the absence of probe data in the May 2016 IEP, is belied by the fact that on the June 2017 IEP, S.D. was reported to read 103.5 wcpm[103] on a 3rd grade probe, up from 38 wcpm on S.D.'s May 2015

---

[100] The Hearing Officer mistakenly wrote that the May 2016 IEP included 3rd grade probe data with goal progress written for 4th grade probes. However, even the District agrees that this was a typo and that the Hearing Officer intended to phrase the sentence as it appears here. *See* Plaintiff's Motion for Disposition on the Administrative Record, Dec. 21, 2018 [Doc. No. 15] at 18.

[101] Administrative Decision at 18.

[102] *See id.*

[103] The District reports S.D.'s wcpm based on her highest score of 107 wcpm. However, the Court provides due weight to the Hearing Officer's finding of fact that S.D.'s wcpm score should be based on her median score which, here, is 103.5 wcpm on a 3rd grade probe.

probe. The District further points to S.D.'s learning disability, as well as her progress both on the AIMSweb and other tests, to show that she was receiving a FAPE.[104]

Regardless, the Hearing Officer did not find that a FAPE was denied in the 2015 and 2016 IEPs.[105] It was only with regard to reading fluency for the 6th grade, based on the 2017 IEP, that the Hearing Officer concluded that S.D. was denied a FAPE. As Parents themselves explain: The Hearing Officer "drew a careful and nuanced distinction between S.D.'s modest progress in prior years and her actual and perceived prospects for advancement in reading fluency for sixth-grade."[106]

While the Hearing Officer did not find a denial of FAPE for the earlier years, he based his finding that S.D. was denied a FAPE for 6th grade in reading fluency on the goals set on the IEPs from the prior years. The Hearing Officer explained that while combining 2nd grade probe data with 3rd grade goals on the May 2016 IEP was not itself a denial of FAPE, this issue had "prejudicial follow-on effects for the June 2017 IEP because the reading fluency goal for the 2017-18 school year is written for 4th grade probes, but there is no 4th grade reading fluency data reported as a baseline for that goal."[107] And according to the Hearing Officer, these holes in the reading fluency goal-progress constituted a prejudicial denial of FAPE.[108] In other words, the lack of 3rd grade probe data on the May 2016 IEP is only relevant inasmuch as it combines with the missing 4th grade probe data on the June 2017 IEP.

---

[104] Plaintiff's Motion for Disposition on the Administrative Record, Dec. 21, 2018 [Doc. No. 15] at 22–28.

[105] *See generally* Administrative Decision; *see also* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Disposition on the Administrative Record, Dec. 21, 2018 [Doc. No. 16] at 16 ("Finally, this Court should reject the District's implicit argument that the IHO erred when he found that the District denied S.D. and Parents FAPE for sixth-grade, but not for fourth and fifth grades.").

[106] Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Disposition on the Administrative Record, Dec. 21, 2018 [Doc. No. 16] at 16.

[107] Administrative Decision at 18.

[108] *Id.*

15

However, the Hearing Officer's finding that there is no 4th grade reading fluency data reported as a baseline on the July 2017 IEP is erroneous. As the District points out, S.D.'s June 2017 IEP did include S.D.'s 4th grade baseline in reading fluency multiple times.[109] The section titled "II. Present Levels of Academic Achievement" includes a notation that S.D. "had a fourth grade baseline of 76 words correct per minute."[110] Similarly, in the section titled "V. Goals and Objectives," S.D.'s "Measurable Annual Goal" includes a baseline of "Given a 4th grade curriculum based reading passage, [S.D.] reads 76 words correct per minute."[111] The Court therefore cannot affirm the Hearing Officer's conclusion.[112]

After removing the Hearing Officer's flawed conclusion that the 2017 IEP failed to provide a FAPE because it was missing baseline data, Parents' argument can be boiled down to the following: S.D. was denied a FAPE in her 2017 IEP because she had failed to progress appropriately in reading fluency and because the 2017 IEP did not take into account that she consistently failed to meet the goals provided for her.

Parents argue that there is not enough evidence to overturn the Hearing Officer's finding that the AIMSweb data should receive more weight than other tests and that the Hearing Officer correctly found that S.D. did not make progress in reading fluency.[113] Moreover, Parents claim that S.D.'s significant progress in all other areas demonstrates that S.D's stagnation in only

---

[109] Plaintiff's Motion for Disposition on the Administrative Record, Dec. 21, 2018 [Doc. No. 15] at 17.

[110] AR S-15 at 10.

[111] *Id.* at 24.

[112] Furthermore, after providing the Hearing Officer's finding that S.D. was not instructed on a 3rd grade level during the 2015-2016 school year with due weight, the Court also rejects this finding based on S.D.'s marked improvement on the 3rd grade probe in the June 2017 IEP demonstrating her instruction on that level and the District's explanation for why there was only 2nd and 4th grade probe data recorded on the May 2016 IEP. Thus, the Court finds that there were no holes in S.D.'s IEPs.

[113] The Hearing Officer credited the AIMSweb over other tests because it was the test used on S.D.'s IEP and, after giving due weight to this finding, the Court accepts this finding. *See* Administrative Decision at 17–18.

reading fluency was not simply a result of her disability and, instead, was attributable to her flawed IEP in this particular area.[114]

The District claims that S.D.'s "reading fluency goals were drafted in accordance with her progress on each preceding level" and that although the IEP goals "were a bit aggressive, the reading instruction provided was appropriate in meeting [S.D.'s] needs."[115] The District further claims that the Hearing Officer "failed to consider [that] an annual goal is a projection, not a guarantee."[116]

Although the fact that S.D. apparently did not meet her IEP reading fluency goals in a timely manner is troubling, the Court finds that the District's June 2017 IEP was "reasonably calculated to enable" S.D. to "receive meaningful educational benefits in light of [her] intellectual potential."[117] Even though S.D. "did not meet every learning goal, this does not render [her] IEPs inappropriate or inadequate."[118] S.D.'s IEP "need not necessarily provide 'the optimal level of services' that parents might desire for their child."[119] On the AIMSweb assessments, S.D. progressed steadily in reading fluency each year — on the 2nd grade level S.D. progressed from a median of 58 wcpm in May 2015, to 80 wcpm in December 2015, to 96 wcpm in May 2016, to a median of 108 wcpm in June 2017 — a score that demonstrated that S.D. "mastered" her objective.[120] And on the 3rd grade probe, S.D. progressed from 38 wcpm in

[114] Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Disposition on the Administrative Record, Dec. 21, 2018 [Doc. No. 16] at 8–9.

[115] Plaintiff's Motion for Disposition on the Administrative Record, Dec. 21, 2018 [Doc. No. 15] at 15–17.

[116] *Id.* at 17.

[117] *D.S.*, 602 F.3d at 557.

[118] *J.G. v. New Hope-Solebury Sch. Dist.*, 323 F. Supp. 3d 716, 724 (E.D. Pa. 2018) (citing *Ridley*, 680 F.3d at 268).

[119] *Jack J. through Jennifer S. v. Coatesville Area Sch. Dist.*, No. 17-CV-3793, 2018 WL 3397552, at *10 (E.D. Pa. July 12, 2018) (quoting D.S., 602 F.3d at 557).

[120] S-15 at 10.

May 2015 to a median of 103.5 wcpm in June 2017 — an average increase of 32.75 wcpm per year.[121] On S.D.'s 2017 IEP, she was given a short-term objective of raising her 3rd grade probe wcpm by 28 words from 99 to 127 and a long-term goal of increasing her 4th grade probe from 76 wcpm to 107 wcpm.

To the extent that the Hearing Officer can be understood to have based his decision that the District denied S.D. a FAPE on substantive grounds, the removal of the erroneous finding of holes in the reading fluency data, fatally undermines this conclusion. Giving due weight to the Hearing Officer's remaining findings, including S.D.'s reading fluency improvements and considering the correct evidence regarding the June 2017 IEP, the Court determines that the District's IEP was "reasonably calculated to enable [her] to receive meaningful education benefits in light of [her] intellectual potential . . . and individual abilities."[122] Accordingly, since the IEP was appropriate, tuition reimbursement for private school and transportation is not warranted.[123]

### B. Parents' Procedural Right of Participation was Not Violated.

The Hearing Officer determined that the District denied S.D. a "FAPE in one regard— reading fluency."[124] This decision was "primarily related" to the Hearing Officer's finding of a "flawed reading fluency goal in the June 2017 IEP—a goal written for 4th grade probes without any reported 4th grade baseline to gauge goal-progress."[125] And the Hearing Officer held that

---

[121] *See Red Clay Consol. Sch. Dist. v. T.S.*, 893 F. Supp. 2d 643, 651 (D. Del. 2012) (finding that demonstrated improvement supports a finding that the student was not denied the right to a FAPE).

[122] *Ridley*, 680 F.3d at 269.

[123] *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985).

[124] Administrative Decision at 21.

[125] *Id.*; *see also id.* at 18 ("[T]he reading fluency goal for the 2017-2018 school year is written for 4th grade probes but there is no 4th grade reading fluency data to serve as a baseline for that goal.").

"holes in the reading fluency goal-progress data do not allow a reader, and here more specifically does not allow parents, to follow the student's goal progress in reading fluency from year to year."[126]

"The IDEA recognizes the importance—and, indeed the necessity—of parental participation in both the development of an IEP and any subsequent assessment of its effectiveness."[127] Thus, the IDEA establishes various procedural safeguards which guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education, and the right to seek review of decisions they believe are inappropriate.[128]

The Supreme Court has explained that:

These safeguards include the right to examine all relevant records pertaining to the identification, evaluation, and educational placement of their child; prior written notice whenever the responsible educational agency proposes (or refuses) to change the child's placement or program; an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education; and an opportunity for an impartial "due process hearing."[129]

The parameters of the parents' opportunity to participate are set forth in the regulations at 34 CFR § 300.322. Relevant to this case, those regulations provide that "[t]he public agency must take whatever action is necessary to ensure that the parent understands the proceedings of the IEP team meeting, including arranging for an interpreter for parents with deafness or whose native language is other than English."[130]

---

[126] *Id.* at 18.

[127] *Colonial Sch. Dist.*, 2018 WL 2010915, at *12 (citing *Honig v. Doe*, 484 U.S. 305, 311 (1988)).

[128] *See id.*

[129] *Honig*, 484 U.S. at 311–12.

[130] 34 C.F.R. § 300.322. The School District must also: 1) ensure that the parents are present at the meeting by giving them proper notification and finding a mutually agreeable time and place; 2) inform them in a notice of the purpose, time and place of the meeting, and of their right to participate; 3) consider alternatives to physical presence of the parents, such as a phone conference, if necessary; 4) hold a conference without a parent present only when efforts to obtain the parent's presence are well-documented; and 5) provide the parent with a copy of the IEP at no charge. *See Colonial Sch. Dist.*, 2018 WL 2010915, at *13 (citing 34 C.F.R. § 300.322).

In this case, the Hearing Officer found that Parents were denied the opportunity to participate: "District denied the student FAPE, and more precisely barred the parents from meaningful participation in understanding the student's programming due to holes in the reading fluency goal-progress data, in its handling of reading fluency in the student's education programming."[131] Parents agree with this finding and argue that "'informed involvement' in this case meant, at a bare minimum, having an accurate grasp of [S.D.'s] reading fluency level and of her year-to-year progress."[132] Parents base this contention on the Supreme Court's holding in *Winkelman v. Parma City School District* that the IDEA "sets up general procedural safeguards that protect the informed involvement of parents in the development of an education for their child."[133] Parents argue based on 34 C.F.R. §300.322 that "informed involvement" extends beyond simply requiring interpreters for non-English speakers and requires that "[t]he public agency must take whatever action is necessary to ensure that the parent understands the proceedings of the IEP team meeting."[134] Rather than dispute whether such a lack of information would deny Parents "informed involvement," the District points out that there was no hole in the 4th grade reading baseline data on the June 2017 IEP.[135]

The Hearing Officer erred in determining that Parents were denied the opportunity to participate. First, as explained above, the Court finds that the record belies the Hearing Officer's

---

[131] Administrative Decision at 19.

[132] Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Disposition on the Administrative Record, Dec. 21, 2018 [Doc. No. 16] at 15 (quoting *Winkelman*, 550 U.S. at 524).

[133] *Id*. (emphasis added by Parents removed).

[134] *Id.* (quoting 34 C.F.R. §300.322) (emphasis added by Parents removed).

[135] Plaintiff's Motion for Disposition on the Administrative Record, Dec. 21, 2018 [Doc. No. 15] at 15.

factual finding that the 4th grade baseline in reading fluency was missing from the 2017 IEP.[136] Thus, the Hearing Officer's primary finding supporting his conclusion that Parents were denied meaningful participation is unsupported by the record and, after affording due weight to this finding, the Court rejects it.

Second, even if the Hearing Officer's finding was correct, the Third Circuit has held that "[t]he content of an IEP . . . does not implicate the IDEA's procedural requirements" because "content is concerned with the IEP's substance, i.e., whether the IEP 'reasonably [is] calculated to enable the child to receive educational benefits'"[137] The basis for the Hearing Officer's conclusion was that the IEP had holes in the included data, which implicates the "content of the IEP" and, therefore, "does not implicate the IDEA's procedural requirements."[138]

Finally, even if the Hearing Officer's finding was correct, and even if this claim can be brought as a challenge to the procedural protections of the IDEA, the Third Circuit has squarely rejected the argument that 34 C.F.R. § 300.322(e) is a broad requirement demanding more than just interpretative services and "decline[d] to deem 'meaningful participation' to require perfect comprehension by parents of all aspects of a student's IEP."[139] In a case with strikingly similar facts, the Third Circuit held that there must be a more "serious deprivation" of parents'

---

[136] *See Shore*, 381 F.3d at 199 (quoting *S.H.*, 336 F.3d at 271); *see also D.S.*, 602 F.3d at 564 ("The issue of whether an IEP is appropriate is a question of fact."); *D.K.*, 696 F.3d at 243 (noting that such factual findings are subject to clear error review).

[137] *D.S.*, 602 F.3d at 565 (quoting *Rowley*, 458 U.S. at 207).

[138] *Id.*; *L.M., ex rel. M.M. v. Downingtown Area Sch. Dist.*, No. 12-CV-5547, 2015 WL 1725091, at *20 (E.D. Pa. Apr. 15, 2015) ("The Third Circuit has determined that a dispute about the specific contents of an IEP is a substantive claim.").

[139] *Colonial Sch. Dist.*, 763 F. App'x at 198.

participatory rights[140] such as "the withholding of a student's evaluation records from her parents in order to find a violation of IDEA's procedural safeguards."[141]

For these reasons, the Court finds that the Hearing Officer's basis for concluding that the District violated the procedural requirements of the IDEA was erroneous. Moreover, Parents concede that the District "communicated with Parents by convening IEP meetings where Parents could talk, holding parent-teacher conferences, sending IEPs with goals and objectives, reports cards and progress reports, and through communications between Parents and District teachers and staff."[142] Therefore, after affording due weight to the Hearing Officer's factual findings, the Court finds by a preponderance of the evidence that there was no procedural violation of the IDEA in this case and therefore reverses the Hearing Officer's decision that the District violated the procedural safeguards of the IDEA.

### C. The District Did Not Violate Section 504.

Parents also alleged a claim under Section 504 which states:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . .[143]

To establish that the District violated Section 504, Parents must prove that (1) S.D. is "disabled" as defined by the Act; (2) S.D. is "otherwise qualified" to participate in school activities; (3) the District receives federal assistance; and (4) S.D. was excluded from

---

[140] *Id.* at 198 (quoting *D.S.*, 602 F.3d at 565).

[141] *Id.* (citing *Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 894 (9th Cir. 2001)).

[142] Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Disposition on the Administrative Record, Dec. 21, 2018 [Doc. No. 16] at 16.

[143] 29 U.S.C. § 794(a).

participation in, denied the benefits of, or subject to discrimination at the school.[144] "The IDEA and Section 504 are similar causes of action" and "a party may use the same conduct as the basis for claims under both the IDEA and [Section 504]."[145] Significantly, "when a district court finds a child was provided with appropriate IDEA services" the district court "need not reach the Section 504 claim."[146]

The only disputed element of the Section 504 claim is whether S.D. was excluded from participation in, denied the benefits of, or subject to discrimination at the school. However, the Court's conclusion that the District provided S.D. with a FAPE in compliance with the IDEA is dispositive of the Section 504 claim. Because the District provided S.D. with a FAPE, "[Parents'] argument is waived or abandoned."[147] Therefore, the Court reverses the Hearing Officer's determination that the District violated Section 504.

## VI.    ATTORNEY'S FEES

A court may award attorney's fees to a "prevailing party" who brought suit under the IDEA.[148] Because Parents did not "prevail," the Court declines to award attorney's fees.[149]

---

[144] *See Andrew M. v. Delaware Cty. Office of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007) (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999)).

[145] *Jack J.*, 2018 WL 3397552, at *14 (citing *Andrew M.*, 490 F.3d at 349).

[146] *Id.* (quoting *L.M.*, 2015 WL 1725091, at *26; *see also Christen G. by Louise G. v. Lower Merion Sch. Dist.*, 919 F. Supp. 793, 821 (E.D. Pa. Feb. 21, 1996).

[147] *Id.* at *15.

[148] 20 U.S.C. § 1415(i)(3)(B)(i)(l).

[149] *Jack J.*, 2018 WL 3397552, at *16 (citing *Hannah L. v. Downingtown Area Sch. Dist.*, 2014 WL 3709980, at *8 (E.D. Pa. July 24, 2014)).

## VII. CONCLUSION

For the foregoing reasons, the Court reverses the Hearing Officer's decision in favor of S.D. and Parents. However, if the District has provided reimbursement, Parents are not required to forfeit any relief they have already been provided, "because this would impose a financial burden which might discourage them or others from seeking relief to which they believe they are entitled."[150] An appropriate order follows.

---

[150] *Colonial Sch. Dist.*, 2018 WL 2010915, at *18.